IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| BRANDON LEE JENKINS | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-181 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Brandon Lee Jenkins, represented by counsel, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Petitioner pleaded not guilty to murder in Cause Number CR31761 in the 75th District Court of Liberty County, Texas. On November 19, 2015, a jury found Petitioner guilty and sentenced him to ninety-nine years of imprisonment.

His conviction was affirmed by the Eighth Court of Appeals on August 23, 2017. *Jenkins v. State*, No. 08-15-00366-CR, 2017 WL 2614212 (Tex. App. – El Paso, Aug. 23, 2017) (not designated for publication). Petitioner did not seek discretionary review with the Texas Court of Criminal Appeals.

Petitioner filed a state application for writ of habeas corpus on September 11, 2018, alleging he was denied effective assistance of counsel during the guilt-innocence phase. The trial court, without a hearing, entered findings of fact and conclusions of law denying relief because Petitioner did not prove deficient performance nor prejudice. The Texas Court of Criminal Appeals ("TCCA") declined to adopt the trial court's findings regarding deficient performance but agreed there was no prejudice. *Ex parte Jenkins*, WR-89,133-01, 2020 WL 1933789 (Tex. Crim. App. Apr. 22, 2020) (not designated for publication).

Petitioner filed the above-referenced petition for writ of habeas corpus alleging several ineffective assistance of counsel claims and arguing the TCCA's decision that Petitioner was not prejudiced by trial counsel's deficient performance was an unreasonable application of Supreme Court precedent. Original Petition (doc. # 1). The specific points of error regarding trial counsel are as follows:

1. Counsel failed to object to the prosecutor's misstatements of the law during the *voir dire* examination, specifically:

   a. When the prosecutor told the jury panel during the voir dire examination, "We are your attorney . . . We represent you, the people, in the criminal courts of the State of Texas;" and

   b. When the prosecutor told the jury panel during the voir dire examination, "that a person cannot use a gun to defend himself in a fistfight;"

2. Counsel failed to file a motion in limine and object to testimony that Petitioner remained silent and requested counsel after he was arrested;

3. Counsel elicited prejudicial testimony that Petitioner is easily provoked;

4. Counsel elicited prejudicial testimony regarding Petitioner's inadmissible convictions and extraneous offenses and failed to object to inadmissible testimony regarding the details; namely:

2

        i..     He sold drugs for living;

        ii.     He was placed on probation for possession of a controlled substance and, after it was revoked, went to prison for 18 months;

        iii.     He was placed on probation for assaulting his girlfriend; and

        iv.     He was placed on probation for making terroristic threats at a gun range;

5.     Counsel was ineffective in failing to object when the prosecutor elicited the following details of these offenses on cross-examination:

        i.     That Petitioner did not complete the gun course because he threatened to shoot the instructor;

        ii.     That he was charged with hitting his girlfriend in the face and burning her with an iron;

        iii.     That he signed a judicial confession and lied under oath that he committed that assault so he could get out of jail; and

        iv.     That he carried a gun for protection as a drug dealer;

6.     Counsel failed to object to the prosecutor's improper references to the judge's opinion regarding self-defense; and

7.     Counsel failed to respond to the prosecutor's arguments that Petitioner did not act in self-defense.

Brief in Support (doc. # 2).

Respondent was ordered to show cause and filed a Response on August 14, 2020 (doc. # 10). Respondent argues the TCCA merely declined to adopt the trial court's specific findings as to deficiency which was not necessarily a failure to rule against Petitioner on the issue of deficiency, but it was also not a ruling that trial counsel was deficient either. *Id.*, pg. 6. Respondent then argues the AEDPA's deference to the state's decision is applicable to the denial of relief in its entirety and

to each individual prong under *Strickland*.  At best, Respondent contends the TCCA's ruling warrants a *de novo* review of the deficiency prong and a deferential AEDPA review of the prejudice prong and the TCCA's ultimate denial of relief, citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005), wherein according to Respondent, Petitioner cannot meet his burden under *Strickland*.

Petitioner, in his Reply, argues the TCCA's refusal to adopt the trial court's findings as to deficiency "*ipso facto*" means that the TCCA concluded counsel performed deficiently.  Thus, according to Petitioner, the core issue on federal habeas review is whether the state court decision that Petitioner was not prejudiced by counsel's deficient performance involved an unreasonable application of Supreme Court precedent.

<u>Factual Background</u>

As outlined by the Eighth District Court of Appeals:

Early on the morning of February 11, 2015, Kadijas Holmes left her home for work.  Appellant, who was something of her on-again, off-again boyfriend, was with her in the car.  She had intended for him to drop her off at work and then drive the car back to the house.  Instead, the two got into a heated argument, which caused Kadijas to drop Appellant off at the house.

The home was also occupied by several of Kadijas' immediate family members, including her father, Tracy Odell Holmes. A neighbor had heard the earlier argument between Appellant and Kadijas, and around 6:00 a.m., the neighbor heard Appellant and Holmes arguing.  The argument was followed by the sound of gunfire.  The neighbor peered out her window and saw Holmes lying by the roadside in front of his house. He had been shot in the head, the heart, and arm, and likely died instantly. The police later found nine shell casings in the street and the magazine for a pistol.

Another neighbor who had heard the shots saw a figure running through the fog to a nearby residence, owned by Paul Stelly.  The neighbor then saw a car leave the Stelly residence and drive by the body.  Someone got out of the car briefly, and then drove back to the Stelly house.  When the responding officers learned of this, they went to the Stelly residence.  There, they found Appellant hiding in a shed in the back.  They also found the gun hidden in a

4

pile of laundry in the house. Tawana Stelly testified at trial that Appellant had come into the house that morning and exclaimed that he had killed Holmes. He then ran through the laundry room and out the back door.

Appellant admitted to the shooting. He claimed, however, that Holmes struck him in the back of the head with something following an argument. Appellant then turned to run and discharged the handgun in Holmes's direction in self-defense. The jury rejected that defense and instead found Appellant guilty of felony murder, and sentenced him to ninety-nine years.

*Jenkins v. State*, No. 08-15-00366-CR (docket entry no. 12-2).

<u>State Trial Court Findings of Fact & Conclusions of Law</u>

\*\*\*

***Findings of Fact***

1.    Trial counsel, given the totality of the circumstances and based on the personal recollection of the Court, performed effectively, and with an apparent trial strategy.

2.    Based on the Court's knowledge of the trial proceedings and of trial counsel, the affidavit testimony of trial counsel is not credible.

3.    The Court considered the admission of applicable evidence both under Rule 404(b) and the 403 balancing test.

4.    Testimony regarding prior bad acts demonstrated Applicant's propensity towards violence and to be the first aggressor; all of which are material to the State's case in disproving claims of self-defense.

5.    Applicant complains that ineffective representation led to his conviction.

6.    Applicant does not complain that ineffective representation contributed to the sentence of 99 years in TDCJ.

7.    Applicant admitted to shooting the victim.

8.    Applicant was a convicted felon.

9.    Applicant was in possession of a firearm in violation of the law at the time he shot the victim.

Voir Dire Issues:

10.    The State did not strike at Applicant over the shoulder of his counsel in an attempt to inflame the minds of the jury.

11.    The State advised the jury panel during voir dire that what the lawyers says [sic] is not evidence.

12.    Applicant's counsel affirmed that the law applicable to the case would come from the court.

Miranda Issues:

13.    The Court of Appeals ruled on direct appeal that irrespectively [sic] of the lack of objection or motion for mistrial to preserve possible error on *Miranda* issues, it could not conclude beyond a reasonable doubt that the error contributed to Applicant's conviction or punishment.

14.    During closing argument, the State did not recount any testimony regarding Applicant's right to remain silent.

15.    The State informed the jury panel during voir dire that the Applicant enjoys the right to remain silent and should he elect to do so such fact cannot be considered as any indication of guilt and the Court similarly instructed and admonished the jury in the one instance where applicant objected during trial.

16.    The jury was instructed in the Court's Charge regarding the Applicant's 5th Amendment rights.

17.    Applicant admitted to firing the weapon that killed the victim.

18.    The central issue for the jury was Applicant's claim of self-defense.

Extraneous Offense issues:

19.    Trial counsel was seeking to inoculate the jury against the prejudice that would result from cross-examination regarding prior offenses.

20.    Applicant himself volunteered details concerning prior bad acts by being non-responsive to the question actually asked by trial counsel.

21.    The Court was aware of the parameters of Rule 609 respecting remoteness, and judged the testimony pursuant to the *Theus* standards and also performed

a Rule 403 balancing test in allowing the direct examination to proceed.

22.    The Court considered the admissibility of extraneous offenses under both Rule 404 and 403, with appropriate instructions to the jury in the Court's Charge.

23.    The witness, Kadijas, was non-responsive to the original question when she testified that Applicant was easily provoked and trial counsel could not have anticipated that Kadijas would not answer the question asked, but instead interject a non-responsive reply.

Closing Argument Issues:

24.    Trial counsel, as a matter of trial strategy, put forward self-defense - knowing that it did not apply given Applicant's violation of the law in the course of committing murder.

25.    Trial counsel's strategy appeared to be a subterfuge to distract the jury from the facts of the case in hope that the jury would be sympathetic and find self-defense murky for the State if not fully plausible.

26.    The Court of Appeals noted self-defense is not available when a person is carrying a handgun in violation of Section 46.02 of the Texas Penal Code.

27.    Applicant admitted to being a felon in possession of a handgun, and the physical evidence placed him in the street when firing the gun.

28.    Immediately after the murder Applicant fled the scene, hid the weapon, and secreted himself from law enforcement.

### *Conclusions of Law*

1.    Applicant's actions, post-murder, demonstrate consciousness of guilt.

2.    Counsel was not deficient.

3.    Applicant failed to show by a preponderance of the evidence a constitutional violation, or that he is entitlement [sic] to relief.

4.    The admissibility of prior bad acts or conduct during the trial was not of a constitutional dimension and was not an abuse of the court's discretion.

5.    Applicant had no legal claim to self-defense in light of being a felon in

possession of the weapon at the time he shot and killed the victim.

6.     Any reference to Applicant's assertion of his right to remain silent had no bearing on Applicant's guilt, nor does it undermine confidence in the jury's verdict.

7.     Applicant failed to meet the first prong of *Strickland*.

8.     Notwithstanding that Applicant failed to meet the first prong of *Strickland*, Applicant failed to meet the second prong of *Strickland*.

9.     Assuming trial counsel's representation of Applicant fell below an objective standard of reasonableness in one or more respects, Applicant failed to demonstrate, by a preponderance of the evidence, a reasonable probability that but for such error(s) the result of the proceedings would have been different.  *Tong, 25 S.W.3d at 712*.

Findings of Fact & Conclusions of Law, State Court Records, pgs.4-8 (doc. # 12-26).

## Standard of Review

Title 28 U.S.C. § 2254(a) allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254 generally prohibits a petitioner from re-litigating issues that were adjudicated on the merits in State court proceedings, with two exceptions. *See* 28 U.S.C. § 2254(d).  The first exception allows a petitioner to raise issues previously litigated in the State court in federal habeas proceedings if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The second exception permits re-litigation if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770 (2011).

Federal habeas courts are not an alternative forum for trying facts and issues which were insufficiently developed in state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Further, following the Supreme Court's decision in *Cullen v. Pinholster*, federal habeas review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. 170, 181 (2011).

A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13. An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)), *cert. denied*, 558 U.S. 847 (2009). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

9

The deferential AEDPA standard of review applies even where the state court fails to cite applicable controlling Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 8-9 (2002). Likewise, "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when ... state habeas relief is denied without [a written] opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes the state court applied the proper "clearly established Federal law" and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)). "[A] federal habeas court has 'no authority to grant habeas corpus relief simply because [it] conclude[s] in [its] independent judgment, that a state supreme court's application of [clearly established federal law] is erroenous or incorrect.'" *Kossie v. Thaler*, 423 F. App'x 434, 436 (5th Cir. 2011) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002)).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review).

10

Analysis

As outlined above, the trial court in its Findings of Fact and Conclusions of Law, found that Petitioner's trial counsel was not deficient and, alternatively, failed to establish prejudice. Findings of Fact & Conclusions of Law, pg. 7 (doc. # 12-26). The TCCA declined to adopt the trial court's findings concerning the deficient performance prong of *Strickland*, but agreed that Petitioner had not proven prejudice. Order (doc. # 12-18). The TCCA made no separate finding on deficiency. The undersigned proceeds on the assumption that the TCCA made the determination that counsel was deficient. "When a state court's rulings are vague, its implied factual findings and legal rulings are still entitled to deference." *Gallegos v. Quarterman*, 265 F. App'x 300, 304 (5th Cir. 2008); *see also Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) (implicit factual findings are entitled to deference); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."); *Santellan v. Cockrell*, 271 F.3d 190, 193–94 (5th Cir. 2001) (ultimate ruling of state court entitled to deference even if no explanation for ruling is given). In order to show prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The relevant question is whether the state court's application of the deferential *Strickland* standard was unreasonable. *See Beatty v. Stephens*, 759 F.3d 455, 463 (5th Cir. 2014). It bears repeating, "[b]oth the *Strickland* standard and AEDPA standard are 'highly deferential,' and 'when the two

11

apply in tandem, review is doubly so.'" *Id.* (quoting *Richter*, 562 U.S. at 105).

1.    **Counsel failed to object to the prosecutor's misstatement of the law during the *voir dire* examination that, "We are your attorney . . . We represent you, the people, in the criminal courts of the State of Texas.**

Petitioner argues these statements were improper because they invited the venire to favor the

State and impermissibly "struck at Jenkins 'over the shoulder of his counsel in an endeavor to

inflame the minds of the jury to his prejudice.'" Brief in Support, pg. 17 (doc. # 2).  Petitioner relies

on *Bray v. State*, 478 S.W.2d 89, 89-91 (Tex. Crim. App. 1972) and *Rogeau v. State*, 738 S.W.3d

651, 656-67 (Tex. Crim. App. 1987) in support of his argument.[1]  The relevant full context is as

follows:

> Now, let's talk about the D.A.'s office; and there is a term in law and Order on TV, that lawyer show, we're the people's attorney.  We're your attorney.

> You can't use us to write wills.  You can't use us to come over here as a sound board and pay us money to get us to do something.  We represent you, the people, in the criminal courts of the state of Texas.

> Our duty is not to prosecute as a lot of people think.  Our duty is to see that justice is done in a criminal case.  If it means we go to trial, we go to trial.  If it means that we dismiss a case because although facially, it may look right, upon further investigation it's not and we dismiss the case.

> We are actually sworn in to take our offices, and our duty is to see that justice is done.  Not to represent the interest of a special group or anybody but justice.

Reporter's Record ("RR"), Vol. 4 of 9, Voir Dire, pgs. 34-35; lines 8-2 (doc. # 12-8).

---

[1] In his Reply to the Government's Response, Petitioner states, "Jenkins does not suggest that the jury convicted him because of this comment, but it constitutes a brick in the IAC wall."  Reply, pg. 5 (doc. # 11).

First, the statements made by the prosecutor in this case are distinguishable from the statements made in both *Bray* and *Rougeau*. In *Bray,* the prosecutor went so far as to make comments about how he was glad he did not have to represent the defendant (defense counsel was court-appointed). *Bray*, 478 S.W.2d at 89-91. In *Rougeau*, counsel specifically stated his representation included the victim's family. *Rougeau*, S.W.3d at 656-57. There are no such comments here. Regardless, any error in counsel's failure to object to the misstatement, "[w]e're your attorney," was cured by the additional comments made by the prosecutor explaining to the venire that their duty was "not to prosecute," but to ensure that justice is done, and "[n]ot to represent the interest of a special group or anybody but justice." *See Bray*, 478 S.W.2d at 89-90 ("the primary duty of a member engaged in public prosecution [is] not to convict, but to see that justice is done" quoting Canons of Ethics 4 & 5, State Bar Rules). As a result, Petitioner cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The finding by the TCCA as to prejudice on this point of error was not objectively unreasonable.

2.    **Counsel failed to object to the prosecutor's misstatement of the law during the voir dire examination that, "a person cannot use a gun to defend himself in a fistfight."**

Petitioner argues this statement is a misrepresentation of the law of self-defense in Texas and by not objecting and preserving error, trial counsel allowed the prosecutor to mislead the jury regarding the law of self-defense. Brief in Support, pgs. 17-18 (doc. # 2). Petitioner cites to Texas Penal Code § 9.32(a) (West 2020) and several Texas cases in support of this proposition. The prosecutor's full exchange regarding the law of self-defense is as follows:

MR. WARREN:  Let's talk about possible defensive issues that may arise in this case. Don't know because that's not my case. That's their case, but I want to

13

talk to you about it in case you see it.

But the law is going to give you a definition of what self-defense is. Self-defense is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself.

That's kind of what you thought self-defense was. You had to do it to protect yourself, but the law puts it immediately necessary.

Now, let's talk about force. Force is a law term that could mean anything. It could be pushing somebody. It could be somebody threatening you. There are a whole lot of definitions of force.

You are going to decide whether force was used and whether force was immediately necessary to stop. That's self-defense if it's raised. I don't know if it will be or not, but that's just one of the self-defense issues.

Now, you cannot use force against another in response to somebody calling you bad names. The law specifically says, "[v]erbal provocation is not justification for self-defense."

If somebody calls you a bad name, you don't get to go hit them in the mouth. I'm sorry. That's not self-defense. It's only to defend yourself against the use of force and it's unreasonable force.

Let's talk about self-defense deadly force. You are going to get a definition on this one too probably.

The definition for self-defense deadly force, a person is justified in using deadly force which can cause death or serious bodily injury against another person if he would be justified in using force from the other definition and self-defense and when and to the degree he believes it is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

If a person wants to fistfight you, you can't use a gun to defend yourself. If a person calls you bad names, you can't use a machete to defend yourself. All that make sense to you?

14

You're going to get these definitions in the jury charge. You can protect yourself against the other's use or attempted use of deadly force or to prevent the other's commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Those are the times that you can use deadly force. No other times in the state of Texas. Does that make sense to you?

RR, Vol. 1 of 7, Voir Dire/Jury Trial, pg. 97, line 25 - pg. 100, line 8 (doc. #12-8).

While hands and feet are not considered deadly weapons per se, they can be considered deadly weapons "within the definition of the Penal Code 'depending on the evidence shown.'" *Lin v. State*, 2008 WL 257184, *9 (Tex. App. [1st Dist.] Jan. 31, 2008, pet. ref'd) (quoting *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983)). To the extent the TCCA found counsel ineffective for failing to object to a misstatement of the law of self defense, "the relevant question[_] is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Tyson v. Quarterman*, No. 4:08-CV-002-A/4:08-CV-044-A, 2009 WL 111677, * 5 (N.D. Tex. Jan. 16, 2009) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1987)). A review of the trial court transcripts reveals this is the only time this statement was made; no such statement was made during closing arguments. Moreover, as required, the trial court read the proper instructions to the jury on self-defense, which cured any potential error. Jury Instructions, pgs. 8-26 (doc. # 12-12); Jury Charge pgs. 9-15 (doc. # 12-23). "A jury is presumed to follow its instructions." *Tabler v. Lumpkin*, 543 F. Supp. 3d 461, 493 (W.D. Tex. June 10, 2021) (quoting *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012)); *see also Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001) (despite prosecutor's misstatement of the law during voir dire, there was no constitutional error because the court properly instructed the jury in accordance with the law). "Given the

significant amount of time, evidence, and testimony that the jury had to consider after hearing the prosecutor's statements, and in light of the correct jury instructions, '[t]he comments of . . . counsel during voir dire were surely a distant and convoluted memory by the time the jurors began their deliberations on . . . [Petitioner's] sentence.'" *Tabler*, 543 F. Supp. 3d at 493 (quoting *Penry v. Johnson*, 432 U.S. 782, 801 (2001)). Petitioner cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The TCCA's adjudication of this claim as to prejudice was not objectively unreasonable.

3. **Counsel failed to file a motion in limine and object to testimony that Petitioner remained silent and requested counsel after he was arrested.**

With respect to this point of error, Petitioner complains of the following specific instances of ineffective assistance of counsel:

> 1. The prosecutor told the jury without objection during his opening statement that the police found Jenkins hiding in a shed, advised him of his rights, and he said, "I want an attorney." RR, Vol. 4 of 9, pgs. 195;

> 2. Deputy William Candelari testified without objection that he found Jenkins hiding in a shed, advised him of his rights, and Jenkins said that he did not want to speak. RR, Vol. 6 of 9, pgs. 107-09;

> 3. Detective William Knox testified without objection that Jenkins invoked his Miranda rights at the police station. RR, Vol. 5 of 9, pg. 99;

> 4. The prosecutor elicited on cross-examination of Jenkins that the police wanted to talk to him, but he did not have to talk to them. RR, Vol. 7 of 9, pg. 291. The prosecutor gratuitously commented, "… you didn't want to talk to them and tell them your side of the story. You waited until today." Counsel objected at this point and obtained an instruction to disregard but did not move for a mistrial to preserve error for appeal. RR, Vol. 7 of 9, pg. 292.

Brief in Support, pg. 19 (doc. # 2).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S.C.A. CONST. AMEND. V. The privilege "permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings." *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir. 2012). The privilege also allows a person to express his desire to remain silent, or to remain silent until he has the assistance of an attorney. *Cf. Wainwright v. Greenfield*, 474 U.S. 284, 295 n.13 (1986) ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted.").

In order for the privilege to be given full effect, individuals must not be forced to choose between making potentially incriminating statements and being penalized for refusing to make them. Thus, in *Griffin v. California*, 380 U.S. 609, 613 (1965), the Supreme Court held that a prosecutor may not "tender[ ] to the jury for its consideration the failure of the accused to testify" as substantive evidence of guilt. "[T]he Fifth Amendment ... forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id*. at 615; *see also Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (noting that *Griffin* "prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt.").

Eleven years after *Griffin*, the Supreme Court decided *Doyle v. Ohio*, 426 U.S. 610 (1976). In that case, two defendants were charged with selling marijuana to an informant. In their separate trials, each defendant took the stand and for the first time asserted that he was trying to buy, rather than sell, marijuana. To impeach them, the prosecutor brought out on their respective

cross-examinations that neither defendant told that story to the police after he was arrested. The prosecutor also relied on the defendants' post-arrest silence in his closing arguments.

In considering the constitutionality of this practice, the Supreme Court first noted that the defendants had been given *Miranda* warnings when they were arrested and that those warnings implicitly assured them that their silence would carry no penalty. *Id*. at 618. The Court then concluded that "[i]n such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id*.

 Later, in *Wainwright v. Greenfield*, 474 U.S. 284 (1986), the Court found that the due process concerns recognized in *Doyle* were equally relevant when a defendant's post-arrest silence was used to respond to a defense theory, rather than to impeach the defendant. In *Wainwright*, the defendant presented an insanity defense, and the prosecution attempted to rebut that defense by showing that the defendant was of sound enough mind to exercise his right to remain silent after receiving *Miranda* warnings. The Court held that this violated the defendant's right to due process as interpreted in *Doyle*. *Id*. at 295.

These cases reflect an important difference between the violation of due process recognized in *Doyle* and the violation of the Fifth Amendment privilege recognized in *Griffin*. Specifically, as the Court held in *United States v. Robinson*, 485 U.S. 25, 31-32 (1988), prosecutors may use a defendant's silence at trial to impeach him or to fairly respond to a defense theory without violating the Fifth Amendment privilege. However, due process generally prohibits prosecutors from using the fact that a defendant remained silent after receiving *Miranda* warnings, even if that fact is used

for purposes of impeachment (as in *Doyle*) or in response to a defense theory (as in *Wainwright*).

Indeed, the Court has declined to find a violation of due process based on the mention of a defendant's silence after receiving *Miranda* warnings only where that silence "was not used against him within the meaning of *Doyle*." *Greer v. Miller*, 483 U.S. 756, 764 (1987). Just as in *Doyle*, the defendant in *Greer* took the stand and presented an exculpatory story, and the prosecutor asked him why he had not told that story when he was arrested. However, in *Greer*, defense counsel immediately objected, and the court sustained the objection and later advised the jury that it should disregard any questions to which an objection was sustained. Moreover, the prosecutor asked no further questions on the subject, nor did he refer to the defendant's silence in his closing argument. The Court held that no due process violation occurred because the defendant's post-arrest silence "was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." *Id*. at 764–65. However, commenting on a defendant's silence prior to receiving the *Miranda* warnings, even if post-arrest, is permissible for impeachment purposes. *Fletcher v. Weir*, 455 U.S. 603, 606–07 (1982) (*Doyle* does not prohibit the Government from commenting on a defendant's post-arrest, but pre-*Miranda* warnings, silence).

In this case, even if there was a *Doyle* error, Petitioner has not demonstrated the findings of the TCCA as to no prejudice were objectively unreasonable. As outlined by the Eighth Court of Appeals on direct review, each incident involved a single question where the actual invocation of the privilege was referenced. The prosecution did not mention any of the testimony at issue during closing arguments. In voir dire, the prosecution also informed the panel that every defendant enjoys a right to remain silent which cannot be used against him as an indication of guilt. The trial court also instructed the jury to disregard the testimony in the one instance where trial counsel objected

at trial.

Moreover, the evidence supporting guilt in this case, even after taking into consideration the alleged deficiencies, is overwhelming.  The issue before the jury was the nature of the argument between Petitioner and Holmes, who was the aggressor, and whether Petitioner's resort to gunfire was reasonable.  The evidence before the jury supporting guilt is as follows: (1) Holmes was shot right through his head, his heart, and his arm.  RR Vol. 4 of 9, pgs. 281-84; Vol. 5 of 9, pgs. 27-29, 60-61 & 109; (2) near Holmes' body, the police only found his cigarette.  RR Vol. 4 of 9, pgs. 282; Vol. 7 of 9, pgs. 57-59; (3) there was no bruising or injury to Holmes' knuckles, which would indicate he was fighting or hit someone hard with his fist.  RR Vol. 4 of 9, pgs. 292-93; Vol. 5 of 9, pgs. 31-32, 131-32; (4) Sergeant Josh Cummins testified that the scene looked like someone stood in the street and fired shots, and that he had previously experienced a spread of shell casing from a stationary shooter.  RR Vol. 4 of 9, pg 264; Vol. 5 of 9, pg. 11 & 21; (5) Detective William Knox testified that to shoot someone directly in the head and through the heart while you are moving would have to be purely blind luck.  RR Vol. 5 of 9, pg. 97; (5) the gun Petitioner used to kill Holmes did not have a light trigger pull, all nine of the bullets had been fired, and Petitioner carried it with him outside of Holmes' home.  RR Vol. 4 of 9, pgs. 270-74; Vol. 7 of 9, pgs. 80-81, 86-87, 246 & 251; (7) Petitioner had threatened Kadijas and other people with the gun.  RR Vol. 6 of 9, pg. 153; Vol. 7 of 9, pg. 144; (8) Kadijas stated she was afraid of Petitioner, that he had anger issues, and that on the morning of the murder he was acting very angry, he was being irrational, and he threatened to take her boys.  RR Vol. 6 of 9, pg. 137 & 151; Vol. 7 of 9, pg. 137, 154, 187 & 205; (9) Petitioner hid in a shed after shooting and killing Holmes.  RR Vol. 5 of 9, pgs. 44-47 & 94; (10) Before hiding, Petitioner threw the gun into a clothes basket in the neighbor's house.  RR Vol. 5 of

9, pgs. 50-52; Vol. 6 of 9, pg. 110; Vol. 7 of 9, pgs. 119-20.

In addition, Petitioner's testimony had many inconsistencies.  He asserted that, while he had never practiced clicking the safety on his gun, he was able to do it quickly on the day he shot Petitioner.  RR Vol. 7 of 9, pg. 283.  Petitioner also claimed that he and Holmes were planning to smoke drugs that were in his pocket; however, no drugs were found in his pocket or in his car.  *Id.* at pg. 289.  Petitioner claimed someone must have taken the drugs from his car.  *Id.*  In order to believe Petitioner's story, the jury would have to conclude that, after being hit over the head, he was able to grab his gun, take the safety off, then shoot nine times while running away, all while hitting Holmes through the head and the heart.  *Id.* at pgs. 251-52, 283-84.

In closing, the prosecution argued that Petitioner did not see what hit him in the head; therefore, it was unreasonable for him to use deadly force without knowing what hit him.  RR, Vol. 8 of 9, pg. 48.  In addition, the prosecution argued no reasonable person would take out a gun and "start blazing" simply because one has been hit.  *Id.* The state also argued the improbability of Petitioner's version of the story (e.g. he stumbled to the right, pulled his gun out, and started shooting while running towards the neighbor's house).  *Id.* at pgs. 50-53.  In support, the prosecution referred the jury to the mapped layout of the crime scene, the location of the neighbor's home, where the bullet shells and magazine fell on the ground, where Holmes' body was laying, and the fact that Petitioner was left-handed.  *Id.*

In light of the foregoing, Petitioner cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Koch v. Puckett*, 907 F.2d 524, 528 (5th Cir.  1990) (question on cross-examination of investigator

21

may have opened the door of the investigator's comment on Koch's silence but isolated and did not constitute harmless error).  The finding of the TCCA as to prejudice is entitled to deference.[2]

4.     **Counsel elicited prejudicial testimony that Petitioner is easily provoked**.

Petitioner claims his counsel was ineffective when he asked Kadijas on cross-examination, "Do you feel that Brandon would have to be really provoked in order to shoot somebody."  RR, Vol. 7 of 9, pg. 190 (doc. # 12-11).  She responded, "Brandon is easily provoked."  Petitioner argues her answer undermines the defense of self-defense.  While the question, in isolation, may appear prejudicial, a full review of Kadjia's testimony on direct and cross-examination is necessary to truly establish the prejudicial effect of this one question.

During direct examination, Kadijas testified that she and Petitioner had been in an on again, off again, relationship, that she and their children lived with her parents, and that sometimes, Petitioner lived with her at that home.  RR, Vol. 7 of 9, pgs. 132-33, 145-47 (doc. # 12-11).  The night before the murder, Petitioner agreed to drive Kadijas to work; however, they got in an argument on the way, which was not out of the ordinary.  *Id*., pgs. 135-36.  Kadijas testified that at times she was afraid of Petitioner and considered their relationship over.  *Id*., pgs. 136-37.  The prosecution was able to admit through Kadjia's testimony, over defense counsel's objection, that Petitioner threatened her with the same gun that he used to kill her father.  *Id*. at 137-45. Defense counsel moved for mistrial, arguing the jury instruction concerning Kadija's testimony was

---

[2] Petitioner cites to *White v. Thaler*, 610 F.3d 890, 899-907 (5th Cir. 2010) in support of this argument.  *White,* however, can also be distinguished on the facts.  In *White*, defense counsel on direct examination questioned the Defendant on his post-arrest silence and opened the door for the prosecution to exploit the error.  In addition, the defendant was not Mirandized at the time of his arrest, thus not calling into question a federal constitutional violation under *Doyle*.  The Fifth Circuit, however, alternatively found a constitutional violation and prejudice under the Texas Constitution which gives a broader construction to the state privilege against self-incrimination.

insufficient, but the trial court denied the motion.  *Id*. at 161.

On cross-examination, defense counsel was able to get Kadijas to admit that she did not believe Petitioner would kill her father in cold blood, that her father could have a temper as well, and that she had never seen Petitioner and her father fight physically.  *Id*. at 169-70, 184-85.  Later on re-cross, Kadijas stated she never thought Petitioner would shoot someone.  *Id*. at 190.  It was at this juncture that defense counsel asked if Petitioner would really have to be provoked in order to shoot someone, to which Kadijas responded, "Brandon is easily provoked."  *Id*.

Given the full context of Kadijas' testimony and the overwhelming evidence of guilt, the TCCA's finding of no prejudice is not objectively unreasonable.  Petitioner has not shown that there is a reasonable probability that, but for this error, the result of the proceeding would have been different.  The jury had already heard through direct examination that Petitioner threatened Kadijas with the same gun used to kill her father, a statement far more indicative of how easily he was provoked, and one that likely carried significant weight.  *Koch*, 907 F.2d at 528  ("[i]n light of such evidence presented at trial, the asserted errors complained of by Koch, even if they amounted to ineffective assistance, are not such as to undermine our confidence in this jury verdict.").

5. **Counsel failed to file a *Theus* motion, elicited testimony regarding Petitioner's inadmissible convictions and extraneous offenses, and failed to object to testimony regarding the details.**

Petitioner argues counsel was ineffective when, on direct examination, he elicited testimony from Petitioner that he sold drugs for a living; that he was placed on probation for possession of a controlled substance and, after it was revoked, went to prison for eighteen months; that he was placed on probation for assaulting his girlfriend; and that he was placed on probation for making terroristic threats at a gun range.  RR, Vol. 7 of 9, pgs. 224-25, 227-29, 233, 269-72, 277 & 279.

Petitioner complains further that counsel then failed to object when the prosecutor elicited the details of these offenses on cross-examination: that Petitioner did not complete the gun course because he threatened to shoot the instructor; that he was charged with hitting a female in the face and burning her with an iron; that he signed a judicial confession and lied under oath about that assault to get out of jail; and, that he carried a gun for protection as a drug dealer. RR, Vol. 7 of 9, pgs. 269-72, 277 & 279. Petitioner also complains that trial counsel failed to file a *Theus* motion to exclude these convictions and preserve error for appeal. *Theus v. State*, 845 S.W.2d 874, 880-881 (Tex. Crim. App. 1992).

Texas law permits extraneous offense evidence if it is "relevant to a noncharacter conformity fact of consequence in the case, such as rebutting a defensive theory." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990)). "As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not be elicited by 'prompting or maneuvering' by the State." *Wheeler v. State*, 67 S.W.3d 769, 885 (Tex. Crim. App. 2002) (citing *Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980) (stating that State "may not rely on its own questioning" to get into collateral matters, extraneous offenses, and bad acts that "would otherwise be inadmissible.")). Here, Petitioner chose to testify in support of his theory of self-defense.[3] Assuming counsel was deficient in failing to file a *Theus* motion pre-trial, in eliciting testimony regarding the extraneous offenses, and in failing to object to the State's

---

[3] The trial court, outside the presence of the jury, confirmed it was Petitioner's voluntary decision to testify on his own behalf. The trial court specifically asked Petitioner if counsel advised him that he would be subject to cross-examination and "that in all probability all [his] past criminal history and other bad acts may be inquired into," to which Petitioner responded in the affirmative. RR, Vol. 7 of 9, pgs. 257-59 (doc. # 12-11).

questioning on the details of the offenses, this court "must determine what arguments or theories . . . could have supporte[d] the state court's decision" in finding no prejudice. *Cullen v. Pinholster*, 563 U.S. 170, 187–89, (2011). As before, the overwhelming evidence of guilt in this case cannot be ignored. Most significant was the testimony elicited by the prosecution on direct examination of Kadijas that Petitioner threatened her with the same gun."[4] While the admittance of the detailed testimony regarding the extraneous offenses, without objection, is concerning, this court cannot substitute its own judgment for that of the TCCA. *Andrews v. State*, 429 S.W.3d 849, 858 (Tex. App. – Texarkana 2014, pet. ref'd) ("Beyond the fact that a witness has been convicted of a crime, the details of the offense are not admissible."). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." *McGhee v. Vannoy*, 2021 WL 2827773, *9 E.D. La. June 10, 2021) (quoting *Price v. Vincent*, 538 U.S. 634, 641 (2003)). The question, as previously stated, is whether the state court's determination is objectively unreasonable. Given the overwhelming evidence of guilt, Petitioner has not shown that there is a reasonable probability that, but for this error, the result of the proceeding would have been different.

**6.    Counsel failed to object to the prosecutor's improper references to the judge's opinion regarding self-defense;**

Petitioner next argues that counsel was ineffective when the prosecutor told the jury panel, without objection, during the voir dire examination that the defense would move for an instructed verdict after the State rested; that the jury "won't get to see it but it will happen;" that "the judge will rule . . . whether there is enough evidence to give it to the jury or not;" and, if there is not enough

---

[4] Here, counsel did object, asked for an instruction, and moved for a mistrial.

evidence, "it's over with."  Brief in Support, pg. 26 (doc. # 2); RR, Vol. 4 of 9, pg. 85.  Petitioner

also complains the prosecutor argued, without objection, during summation that the inclusion of self-

defense in the charge does not mean that the judge thinks that it applies.  *Id*; RR Vol. 8 of 9, pg. 28.

The full context of both statements is as follows:

> [During voir dire] The burden is on me.  They don't have to a call a witness, but they can call a witness if they want to or they choose to put something on because they think it will help their case.

> But when my case is over Walter has the absolute right to stand up and say, "Judge, we want a directed verdict because Mr. Warren just didn't do it."

> Actually it will happen.  You won't get to see it but it will happen and the judge will rule on the merits of the case at that particular time whether there is enough evidence to give it to the jury or not.  If I didn't do it, it's over with.  Y'all all got that?

RR, Vol. 4 of 9, pg. 85, lines 7-20.

> [During closing] Now, the court's charge contains all the law necessary to enable you to reach a verdict.  If any evidence–it doesn't say any credible evidence. It says if any evidence was presented on an issue, the law on that issue must be provided to you.

> When I say credible evidence, I want to point out something that's really the issue in this case, self-defense.  Now, because self-defense is included in the jury charge, that doesn't mean the judge thinks it applies.

> It means it was brought up as an issue.  You have to be told the law.  It doesn't mean the state thinks it applies.  Because Mr. Fontentot thinks its an issue, you have to be told the law.

> It's included because the defendant claimed it.  That's what it is.

RR, Vol. 8 of 9, pg. 28.

In analyzing the prejudice component with respect to counsel's failure to object to the prosecution's improper jury arguments, the relevant inquiry on habeas relief is whether the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168 (1986). "The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Surry v. Warden Louisiana State Penitentiary*, 2009 WL 1874102, *3 (W.D. La. June 29, 2009) (citing *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988) and *Turner v. Johnson*, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997)).

During the trial court's instructions to the jury after voir dire, the trial court explained the judge's role in a criminal trial: "[m]y job is to decide the law and make sure both sides receive a fair trial. When I rule on the admissibility of evidence or hear other objections, I'm not indicating my personal feelings for one side or the other but simply applying rules of law established by the legislature that govern the trial of criminal cases in Texas." RR, Vol. 4 of 9, pg. 178 (doc. #12-8).

"A jury is presumed to follow its instructions." *Tabler v. Lumpkin*, 543 F. Supp. 3d 461, 493 (W.D. Tex. June 10, 2021) (quoting *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012)); *see also Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001) (despite prosecutor's misstatement of the law during voir dire, there was no constitutional error because the court properly instructed the jury in accordance with the law). Given this instruction, the overwhelming evidence of guilt in this case and the two isolated incidents relating to the judge's opinion on the theory of self-defense, the

undersigned finds that the findings of the TCCA were not objectively unreasonable.  Petitioner has not shown that there is a reasonable probability that, but for this error, the result of the proceeding would have been different.

7.  **Counsel failed to respond to the prosecutor's arguments that Petitioner did not act in self-defense**.

With respect to his last point of error, Petitioner argues that during summation, trial counsel failed to respond to the prosecutor's specific arguments that self-defense did not apply because Holmes did not use deadly force by hitting Petitioner in the head, and that Petitioner was unlawfully carrying a gun while discussing their differences.  Petitioner contends that while trial counsel discussed the defense of self-defense in general, he did not respond specifically and explain why self-defense applied to the facts of this case.  Petitioner argues trial counsel should have argued that Holmes provoked the difficulty by confronting Petitioner about Kadijas and hitting him in the head; that Holmes' fist was a deadly weapon because it was capable of causing serious bodily injury; that Petitioner believed that it was immediately necessary to fire to defend himself against an attack by Holmes; and that Petitioner did not forfeit his right to self-defense by unlawfully carrying a gun because he did not initiate the discussion regarding Kadijas, and Holmes hit him in the head.  Brief in Support, pg. 28 (doc. # 2).

During closing, both of Petitioner's attorneys delivered arguments.  RR, Vol. 8 of 9, pgs. 32-39 and 39-46.  Mr. Etheridge argued that when found by police, Petitioner came out with his "palms up,"–that he had "nothing to hide," that he admitted the gun was his, that he is not an "angel," and that he came forth with his criminal history.  *Id*., pgs. 33, 37, 40-41 & 45.  Etheridge reminded the jury of the testimony of Mary Smith, a witness, who stated she heard a man and woman arguing, then

she heard two men arguing. *Id*. at 34-35. Etheridge then compared her testimony to the testimony of Petitioner to show that the two matched and reiterated that Petitioner testified he was hit in the back of the head, he turned, and started shooting. *Id*. at 35-36. Etheridge continued to argue that Petitioner was scared, that he felt like an outsider, and that while he had a criminal history, he was not on trial for his past. *Id*. at 37. Etheridge then argued that not all of the prosecution's witnesses stories matched up. *Id*. He closed by asking that Petitioner be found not guilty of murder or manslaughter by reason of self-defense. *Id*. at 39.

Mr. Fontentot also argued during closing. As he stated in his opening statement, Petitioner was not contesting most of the facts, but that Holmes came up behind him and hit him on the back of the head. *Id*. at 40-41. Fontenot argued that out of instinct, Petitioner grabbed his gun and shot while trying to get away. *Id*. at 41. He reminded the jury that the autopsy supported Petitioner's testimony that he was not close to Holmes when he shot but was at a distance, indicative of him running away. *Id*. at 41-42. Fontenot pointed out that the layout of the cartridges did not contradict Petitioner's testimony. *Id*. at 42. Fontenot then focused on the definition of intentional—arguing that Petitioner, if not acting in self-defense, at worst, acted recklessly—making the lesser-included offense of manslaughter more appropriate. *Id*. at 43-45.

Assuming counsel was deficient in failing to specifically address the prosecution's argument that Holmes was not using deadly force and that Petitioner was carrying a gun unlawfully, the undersigned is hard-pressed to find the findings of the TCCA as to prejudice are objectively unreasonable given the overwhelming evidence of guilt and the arguments made by trial counsel during closing. Both attorneys summarized the evidence and their belief that it established Petitioner's right to self-defense. Petitioner has not shown that there is a reasonable probability that,

but for this error, the result of the proceeding would have been different.

In sum, "[t]he Constitution does not guarantee every state defendant an error-free trial and before a federal court may overturn a state conviction, it must find an error that amounts to a failure to observe that fundamental fairness essential to the very concept of justice." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986) (quotations omitted). The focus of the objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)), *cert. denied*, 558 U.S. 847 (2009). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770 (2011). The undersigned finds that fairminded jurists could disagree as to the correctness of the TCCA's decision on prejudice as to each point of error.

## Recommendation

The above-referenced petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied.

## Objections

Within fourteen (14) days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 20th day of July, 2023.

_____
Zack Hawthorn
United States Magistrate Judge